# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC, | |
| Plaintiff, | Hon. Faith S. Hochberg, U.S.D.J. |
| v. | |
| JOSEPH R. DEMELO, NORMA DEMELO, | |
| JOSEPH R. DEMELO, NORMA DEMELO, | Civil Action No.: 08-cv-736 (FSH)(PS) |
| d/b/a REZULTZ MARKETING and | |
| ARUN DATWANI, | |
| Defendants. | **FINAL PRETRIAL ORDER** |

This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ. P. 16; Charles P. Guarino having appeared for Plaintiff NVE, Inc., Ernest D. Buff having appeared for Defendants Joseph R. DeMelo, Norma DeMelo and Rezultz Marketing (collectively, "DeMelo"), and Monica Y. Cho having appeared for Defendant Arun Datwani; and Counsel all having been notified that:

(1)     a civil trial in this matter has been scheduled before Hon. Faith S. Hochberg on TO BE SET;

(2)     the pretrial submissions detailed in ¶¶2, 18 and 19 below are to be submitted no later than ~~September 29, 2009~~ July 27 or they will be deemed waived; and

(3)     a pretrial housekeeping conference is scheduled before Hon. Faith S. Hochberg on a date TO BE SET ~~by the Court following September 29, 2009.~~

the following Final Pretrial Order is hereby entered:

1.  JURISDICTION (Set forth specifically)

This is a civil action for trademark infringement, counterfeiting, false advertising, false designation of origin, unfair competition, and dilution arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051-1127 and the common and statutory laws of the State of New Jersey. As such, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1338 and 15 U.S.C. §1121, and under the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.   PENDING CONTEMPLATED MOTIONS TRIAL BRIEFS (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize the matter and each party's position. NOTE: ALL REMAINING PRE-TRIAL MOTIONS INCLUDING DAUBERT AND IN LIMINE MOTIONS SHALL BE FILED NO LATER THAN **July 27 24, 2009**, and any response shall be submitted no later than **August 3, 2009**. Only those motions listed herein will be entertained prior to trial.) *10*

For Plaintiff:

Cross-motions as needed.

For Defendant DeMelo:

Defendant DeMelo will file a Motion for Summary Judgment seeking summary judgment on the entirety of Plaintiff NVE's complaint and attorney's fees and costs under 15 U.S.C. §1117(a).

For Defendant Datwani: N/A – *case will be subject to a consent order that resolves the case*

3.  STIPULATION OF FACTS (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties.)

As between Plaintiff NVE and Defendants DeMelo:

<u>The Parties</u>

1) Plaintiff NVE is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 15 Whitehall Road, Andover, New Jersey.

2) Defendant Joseph R. DeMelo is an individual located at 2765 East Trinity Mills Road, Suite 400, Carrollton, Texas 75006, who is engaged in the business of sales, distribution and marketing of various dietary supplement products.

3) Defendant Norma DeMelo is an individual located at 2765 East Trinity Mills Road, Suite 400, Carrollton, Texas 75006, who is engaged in the business of sales, distribution and marketing of various dietary supplement products.

4) Defendant Joseph R. DeMelo and Norma DeMelo d/b/a Rezultz Marketing is an unincorporated entity located at 2765 East Trinity Mills Road, Suite 400, Carrollton, Texas 75006 that is engaged in the business of sales, distribution and marketing of various dietary supplement products.

5) NVE manufactures and sell nutritional and dietary supplement products directly to the public as well as to distributors and wholesalers on a nationwide basis.

6) NVE obtained a registration for the mark STACKER 2 on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 2,190,936, used in connection with dietary supplements, namely, herbal fat burning preparations in International Class 005.

7) NVE has also obtained a registration for the mark STACKER 3 on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 2,205,679, used in connection with dietary supplements, namely, herbal fat burning preparations in International Class 005.

<u>Ephedrine Alkaloids and The FDA</u>

8) In February 2004 the FDA issued a "Final Rule" declaring dietary supplements containing ephedrine alkaloids adulterated under the Federal Food, Drug, and Cosmetic Act because they present an unreasonable risk of illness or injury under

the conditions of use recommended or suggested in labeling, or if no conditions of use are suggested or recommended in labeling, under ordinary conditions of use, promulgated in 69 Fed. Reg. 6788 (Feb. 11, 2004) ("2004 Final Rule").

9) The "2004 Final Rule" was effective on April 12, 2004.

10) The US Dist. Court residing in Utah enjoined the FDA from taking enforcement action against Nutraceutical for their sale of a dietary supplement containing 10 mg or less of ephedrine alkaloids per daily dose. *Nutraceutical Corp. v. Crawford*, 364 F. Supp. 2d 1310, 1321 (D. Utah 2005).

11) The FDA appealed the US Dist. Court residing in Utah's ruling to the 10th Circuit wherein on August 17, 2006 the US Dist. Court residing in Utah's holding was reversed and remanded. *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1043-1044 (10th Cir. Utah 2006), *cert. den.* by *Nutraceutical Corp. v. von Eschenbach*, 127 S. Ct. 2295, 167 L. Ed. 2d 1089, 2007 U.S. LEXIS 5176 (U.S., May 14, 2007).

## Parties Activities

12) Prior to and during early 2004 NVE manufactured and sold "Stacker 2" and "Stacker 3" products containing ephedrine alkaloids to consumers directly and to distributors and wholesalers.

13) NVE sold or delivered "Stacker 2" and "Stacker 3" products containing ephedrine alkaloids to its distributors, including Dino & Charmaigne Felici, 631 South Apopka Avenue Inverness, Florida 34452; DNC Distribution, 631 South Apopka Avenue Inverness, Florida 34452;  Global Nutrition, 1825 NW 38th Avenue Lauderhill, Florida 33311;Var Consulting, 23 Thistle Meadow Lane  Bradford Ct. 06405.

14) These distributors bought the "Stacker 2" and "Stacker 3" ephedrine supplement products directly from NVE.

15) NVE received payment for the "Stacker 2" and "Stacker 3" ephedrine supplement products from the distributors.

16) In January through June of 2006 the DeMelos purchased some of the "Stacker 2" and "Stacker 3" supplements containing ephedrine alkaloids from the two south Florida distributors.

17) The "Stacker 2" and "Stacker 3" ephedrine supplement products included legitimate registration numbers.

18) The "Stacker 2" and "Stacker 3" ephedrine supplement products remained in their original packaging and genuine state and were not opened or otherwise manipulated in any way by the DeMelos.

19) The DeMelos sold the "Stacker 2" and "Stacker 3" ephedrine supplements in NVE's original sealed packaging.

20) In August 2006 the 10th Circ. reversed and remanded the lower Court's holding in the *Nutraceutical* case. *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1043-1044 (10th Cir. Utah 2006), *cert. den.* by *Nutraceutical Corp. v. von Eschenbach*, 127 S. Ct. 2295, 167 L. Ed. 2d 1089, 2007 U.S. LEXIS 5176 (U.S., May 14, 2007).

21) The "Stacker 2" and "Stacker 3" supplement products containing ephedrine alkaloids sold by the DeMelo's were NVE's actual goods sold under NVE's trademark.

22) Following the imposition of the FDA's Final Rule, NVE reformulated its products to eliminate the banned ephedrine alkaloids, and began distribution, marketing, and sales of ephedra-free nutritional supplements using NVE's Marks immediately following the April 12, 2004 effective date of the Final Rule.

As between Plaintiff NVE and Defendant Datwani: N/A – See Page 2

4.  JUDICIAL NOTICE

A.  Plaintiff requests that the Court take judicial notice of the following facts:

i. NVE's registration of the mark STACKER 2 on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 2,190,936, in connection with dietary supplements, namely, herbal fat burning preparations in International Class 005.

ii. NVE's registration of the mark STACKER 3 on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 2,205,679, in connection with dietary supplements, namely, herbal fat burning preparations in International Class 005.

iii. NVE's registration of the mark YELLOW SWARM on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 2,797,859, in connection with nutritional and dietary supplements in International Class 005.

iv. The February 2004 FDA "Final Rule" declaring dietary supplements containing ephedrine alkaloids "adulterated" under the Federal Food, Drug, and Cosmetic Act promulgated in 69 Fed. Reg. 6788 (Feb. 11, 2004).

B. Defendant objects to the taking of judicial notice for the following reasons:

Defendant DeMelo objects to any judicial notice regarding the mark YELLOW SWARM as same is irrelevant to the case-in-suit.

5. JUDICIAL NOTICE

Defendant DeMelo:

A. Defendant DeMelo requests that the Court take judicial notice of the following facts:

Defendant DeMelo respectfully requests judicial notice of the fact that the February 2004 FDA "Final Rule" declaring dietary supplements containing ephedrine alkaloids adulterated under the Federal Food, Drug, and Cosmetic Act promulgated in 69 Fed. Reg. 6788 (Feb. 11, 2004) was effectively overturned by the US District Court residing in Utah in April 2005 so that a party could legally sell dietary supplements containing ephedrine alkaloids after April 2005 up until the 10th Circuit's reverse and remand in August 2006, and that such holding was not dose specific. *Nutraceutical Corp. v. Crawford*, 364 F. Supp. 2d 1310, 1321 (D. Utah 2005). *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1043-1044 (10th Cir. Utah 2006), *cert. den.* by *Nutraceutical Corp. v. von Eschenbach*, 127 S. Ct. 2295, 167 L. Ed. 2d 1089, 2007 U.S. LEXIS 5176 (U.S., May 14, 2007).

Defendant DeMelo respectfully requests judicial notice that failure of NVE reach its burden of proof as to the federal claims of Counts I and Count II will cause the pendant common law and state claims of Counts III, IV, V and VI to fall.

B. Plaintiff objects to the taking of judicial notice for the following reasons:

The District Court ruling cited by defendant's counsel in *Nutraceutical Corp. v. Crawford* was both fact- and case-specific, and did not act as a general repeal of the FDA's Final Rule. At most, this decision temporarily prevented the FDA from taking action against Nutraceutical Corp., the Utah-based company that was the named plaintiff in the cited case. Further, it is evident from the language of the decision that the ruling was dependent upon the dosage at issue, given that the Court specified that the FDA could not stop the sale Nutraceutical Corp.'s dietary supplement containing 10 mg or less of ephedra alkaloids. The products at issue in the instant case contain 25 mg of ephedra alkaloids, well in excess of the 10 mg, specified in the Utah decision. Further, the decision of a District Court in Utah had no effect on the FDA's enforcement of its rules outside the Court's geographical jurisdiction.

<u>Defendant Datwani:</u> See Page 2

    A. Defendant Datwani requests that the Court take judicial notice of the following facts: N/A *–See Page 2*

    B. Plaintiff objects to the taking of judicial notice for the following reasons: N/A *–See Page 2*

6. **PLAINTIFF'S CONTESTED FACTS** (Stated separately for each defendant. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

<u>As to Defendant DeMelo:</u>

    A. Plaintiff intends to prove the following contested facts with regard to liability:

        i. Following the imposition of the FDA's Final Rule, NVE reformulated its products to eliminate the banned ephedrine alkaloids, and began distribution, marketing, and sales of ephedra-free nutritional supplements using NVE's Marks immediately following the April 12, 2004 effective date of the Final Rule.

        ii. Instead of obtaining and reselling NVE's legitimate ephedra-free STACKER 2, STACKER 3, and YELLOW SWARM nutritional supplement products, the Defendants began offering infringing "Stacker 2," "Stacker 3," and "Yellow Swarm" type products containing banned ephedra alkaloids to the general public.

        iii. Joseph Demelo and Norma Demelo manufactured, marketed, and distributed products infringing upon NVE's Marks both individually and through their Rezultz business name, which were sold through both traditional and online distributors.

        iv. Long after NVE's adoption and use of its trademarks, long after NVE registered its STACKER 2, STACKER 3, and YELLOW SWARM trademarks, and long after NVE's trademarks had become famous, Defendants commenced the promotion, advertising, importation, distribution, offering for sale and sale in commerce of merchandise bearing infringements of the NVE

trademarks as those marks appear on look-a-like nutritional supplement products sold through the Defendants' business.

v. Defendants' use of NVE's Marks and is likely to cause confusion, mistake or deception. In particular, consumers are likely to believe that Defendants' merchandise, deemed adulterated by the FDA due to the inclusion of ephedra alkaloids, is authorized, sponsored or otherwise approved by NVE when in fact it is not.

B. Plaintiff intends to prove the following contested facts with regard to damages:
(This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

i. For the sale of NVE products containing ephedrine alkaloids subsequent to the April 12, 2004 FDA ban; $300,000; based upon the volume of sales to be established through trial testimony and documentation produced in this matter.

ii. For the sale of knockoff products infringing upon NVE's trademarks; $100,000; based upon the volume of sales to be established through trial testimony and documentation produced in this matter.

As to Defendant Datwani:

A. Plaintiff intends to prove the following contested facts with regard to liability:
N/A

B. Plaintiff intends to prove the following contested facts with regard to damages: N/A
(This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

7. DEFENDANT'S CONTESTED FACTS (Stated separately for each plaintiff. Proof shall be limited as trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

Defendant DeMelo:

A. Defendant DeMelo intends to prove the following contested facts with regard to liability:

1) The DeMelos did not make, use or offer for sale a reproduction, counterfeit, copy, or colorable imitation of NVE's "Stacker 2" and / "Stacker 3" marks, or a confusingly similar mark, and there is no likelihood-of-confusion about the origin of the goods – all goods sold by the DeMelos were actual authentic and genuine NVE "Stacker 2" and "Stacker 3" products.

2) Defendant DeMelo's activities are protected by the "first sale" or "exhaustion" doctrine premised on grounds that the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product. Regardless whether the defendant was authorized by the producer to sell the product, a first or subsequent purchaser's resale of genuine goods under the producer's trademark is neither infringement nor unfair competition.

3) The DeMelos sale of the "Stacker 2" and "Stacker 3" products represented sale of authentic, genuine NVE products and the sales took place *after* the Dist. Court invalidated the FDA ban and *before* the FDA ban was reinstated by the 10th Circ.   In 2005 the US District Court residing in Utah held that the statute governing the FDA required an affirmative demonstration of "significant or unreasonable" risk at a particular dose level to support a finding of adulteration and that there was not sufficient evidence in the administrative record to establish that the risks identified by the FDA were associated with the intake of low-dose ephedrine. As a result, the District Court held that the FDA's rule extended beyond its legislative directive, thereby invalidating the rule as unconstitutional.   Although Nutraceutical's capsules contained 10mg or less of ephedrine, the District Court's ruling was not dose

specific. *Nutraceutical Corp. v. Crawford*, 364 F. Supp. 2d 1310, 1321 (D. Utah 2005).

4) The DeMelos did not counterfeit, copy or produce a colorable imitation of NVE's "Stacker 2" and / "Stacker 3" marks or products.

5) There was no confusion about the origin of the goods, as the bottles clearly indicated the goods were NVE products.

6) NVE did not dispose of its Stacker 2" and "Stacker 3" ephedrine supplement products in 2004 and instead permitted these products to enter the market place.

7) NVE knew or should have known that Defendant DeMelo (and /or other third parties) were buying "Original NVE Products" from authorized distributors, and NVE allowed the Defendant DeMelo (and / or other third parties) to sell such products allegedly causing "damage" to NVE which NVE could have mitigated by preventing said goods from entering the stream of commerce.

8) Failure of NVE reach its burden of proof as to the federal claims of Counts I and Count II will cause the pendant common law and state claims of Counts III, IV, V and VI to fall.

9) Plaintiff NVE acted with culpable conduct including bad faith, fraud, and / or malice because NVE knew or should have known that Defendant DeMelo (and /or other third parties) were buying "Original NVE Products" from authorized distributors, and NVE allowed the Defendant DeMelo (and / or other third parties) to sell such products allegedly causing "damage" to NVE which NVE could have mitigated by preventing said goods from entering the stream of commerce. Such conduct justifies NVE liability for payment of reasonable attorney's fees and costs to Defendant DeMelos under 15 U.S.C. § 1117(a) which provides in relevant

part that "the court in exceptional cases may award reasonable attorney fees to the prevailing party."

B. Defendant DeMelo intends to prove the following contested facts with regard to damages:

(This statement must include the factual basis for each defense against plaintiff's claims for damages.)

1) Damages to NVE concerning the DeMelos activities regarding the purchase and sale of the authentic NVE products, if any, are minimal.

2) NVE received money from the distributors for the "Stacker 2" and "stacker 3" products containing ephedrine which were later legitimately purchased by the DeMelos and sold during the lift of the FDA ban.

3) The DeMelos only purchased 1440 bottles of "Stacker 2" w/ eph. 100 ct., 5632 bottles of "Stacker 2" w/ eph. 20 ct., 17077 bottles of "Stacker 3" w/ eph. 100 ct., and 288 bottles of "Stacker 3" w/ eph. 20 ct. from the believed to be legitimate NVE distributors.

4) The damages, if any, suffered by NVE were caused in whole or in part by NVE's own conduct.

5) NVE has failed to mitigate their damages.

Defendant Datwani:

A. Defendant Datwani intend to prove the following contested facts with regard to liability:  See Page 2

B. Defendant Datwani intends to prove the following contested facts with regard to damages:  See Page
(This statement must include the factual basis for each defense against plaintiff's claims for damages.)

8. PLAINTIFF'S WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A. On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

i. Robert Occhifinto: to testify regarding the development, marketing, sales, distribution, and profits of all NVE products at issue. Mr. Occhifinto also has knowledge of Defendants' infringing conduct as alleged in the Complaint.

ii. Elizer Kliger a/k/a Eli Kliger, 20-21 60th Street, Apartment 2, Brooklyn, New York 11204: to testify regarding his purchases of infringing merchandise from Defendants, and his knowledge of Defendants' infringing conduct.

iii. Chen Hsin Chan a/k/a Paul Chan, 141-33 254 Street, Rosedale, New York 11422: to testify regarding his purchases of infringing merchandise from Defendants, and his knowledge of Defendants' infringing conduct.

iv. All other witnesses listed on Plaintiff's and Defendants' Initial Disclosures pursuant to Fed. Civ. P. Rule 26(a)(1). — *none expected at this time*

B. On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

Robert Occhifinto: to testify regarding the Defendants' infringing conduct, as well as the losses suffered by NVE as a result of the conduct alleged in the Complaint.

C. Defendant objects to the following witnesses for the reasons stated:

Defendant DeMelo objects to the witness Chen Hsin Chan a/k/a Paul Chan on grounds that said witness has not been listed by Plaintiff prior to this order and the time period for depositions has closed. — *withdrawn*

9. DEFENANTS' WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)

Defendant DeMelo:

A. On liability defendant DeMelo intends to call the following witnesses who will testify in accordance with the following summaries:

Joseph DeMelo: testify as to the authenticity of all NVE products sold by Defendant DeMelo; testify that the DeMelos did not use a reproduction, counterfeit, copy, or colorable imitation of NVE's "Stacker 2" and / "Stacker 3" marks, or a confusingly similar mark, which created likelihood-of-confusion about the origin of the goods. Will further testify as to Defendant DeMelo's activities being protected by the "first sale" or "exhaustion" doctrine premised on grounds that the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product. Defendant DeMelo's sold authentic, genuine NVE "Stacker 2" and

"Stacker 3" products containing ephedrine at a time when the FDA ephedrine ban was not in force.

Robert Occhifinto: has knowledge of the marketing, sale, distribution and profits of NVE's products, as well as the losses, if any, allegedly suffered by NVE as a result of the conduct alleged in the Complaint.

Alfredo "Deano" Felici / DNC (President / Florida Vendor): Distributor from which Defendant DeMelo purchased legitimate NVE products.

Izzy Gonzales / Global Nutrition (President / Florida Vendor): Distributor from which Defendant DeMelo purchased legitimate NVE products.

Donald Montellese/ Global Nutrition (President / Florida Vendor): Distributor from which Defendant DeMelo purchased legitimate NVE products.

Philip Calderone (Florida Vendor;  Partner/Cousin to Alfredo "Deano" Felici)

Vinny / Var Consulting (Vendor in Connecticut; Worked w/ Alfredo "Deano" Felici; Previous NVE Employee)

Jeff Kerlegan (Bioformx, Pres.) – *address + summary to be provided by 7/20/09*

Jared Wheat (Hi-Tech Mfg.)

All other witnesses listed on Plaintiff's and Defendants' Initial Disclosures pursuant to Fed. Civ. P. Rule 26(a)(1). – *none expected*

*[left margin handwritten:] No later than 45 days before trial, the defendant shall advise plaintiff if Mr. Kerlegan will be called at trial. If he is going to be called as a witness, then plaintiff may depose him.*

*[right margin handwritten:] each will testify as to the events surrounding the purchase and/or sale of Stacker 2 and Stacker 3*

B.  On damages defendant DeMelo intends to call the following witnesses who will testify in accordance with the following summaries:

Joseph DeMelo: has knowledge of the quantity of NVE products purchased from the Distributors and amount Defendant DeMelo sold said products for.

Robert Occhifinto: has knowledge of the losses, if any, allegedly suffered by NVE as a result of the conduct alleged in the Complaint.

Alfredo "Deano" Felici / DNC (President / Florida Vendor): Distributor from which Defendant DeMelo purchased legitimate NVE products.   Has knowledge as to whether and amount the distributor paid NVE for the alleged products.

All other witnesses listed on Plaintiff's and Defendants' Initial Disclosures pursuant to Fed. Civ. P. Rule 26(a)(1). – *none expected*

C.  Plaintiff objects to the following witnesses for the reasons stated: NONE

Defendant Datwani: *See Page 2*

A. On liability defendant Datwani intends to call the following witnesses who will testify in accordance with the following summaries: N/A

B. On damages defendant Datwani intends to call the following witnesses who will testify in accordance with the following summaries: N/A

C. Plaintiff objects to the following witnesses for the reasons stated: N/A

10. EXPERT AND SPECIALIZED LAY OPINION WITNESSES (No expert or specialized lay opinion witness offering scientific, technical or other specialized knowledge will be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a copy of his/her report must be provided for the Court's review at the pretrial conference. Said summary shall be read into the record at the time he/she takes the stand, and no opposing counsel shall be permitted to question his/her qualifications unless the basis of the objection is set forth herein.)

A. Plaintiff's expert and specialized lay opinion witnesses are:

N/A [no expert witnesses]

B. Defendant's objections to the qualifications of plaintiff's experts and specialized lay opinion witnesses are:

N/A [no expert witnesses]

C. Defendant DeMelo's expert and specialized lay opinion witnesses are:

N/A [no expert witnesses]

D. Plaintiff's objections to the qualifications of defendant DeMelo's experts and specialized lay opinion witnesses are:

N/A [no expert witnesses]

E. Defendant Datwani's expert and specialized lay opinion witnesses are: See Page 2

F. Plaintiff's objections to the qualifications of defendant Datwani's experts and specialized lay opinion witnesses are: NONE

11. PLAINTIFF'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)

A. On liability plaintiff intends to read into evidence the following: N/A

B. On damages plaintiff intends to read into evidence the following: N/A

C. Defendant objects to the deposition testimony set forth above for the reasons stated: N/A

12. DEFENDANT'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)

Defendant DeMelo:

A. On liability defendant intends to read into evidence the following: N/A

B. On damages defendant intends to read into evidence the following: N/A

C. Plaintiff objects to the deposition testimony set forth above for the reasons stated: N/A

Defendant Datwani:

A. On liability defendant intends to read into evidence the following: N/A ~ See Page 2

B. On damages defendant intends to read into evidence the following: N/A " " "

C. Plaintiff objects to the deposition testimony set forth above for the reasons stated:

13. PLAINTIFF'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.)

A. Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

*See* Plaintiff's Exhibit List attached hereto.

B. Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):

14. DEFENANTS' EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be

necessary to bring in the custodian of any exhibit as to which no such objection is made.)

Defendant DeMelo:

A. Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

   *See* Defendant DeMelo's Exhibit List attached hereto.

B. Plaintiff objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):


Defendant Datwani:  *See Page 2*

A. Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

B. Plaintiff objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):


(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY. ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)


15. PLAINTIFF'S LEGAL ISSUES

Whether the sale of a genuine, but deteriorated, product can be enjoined by the trademark owner as an infringement or dilution of its mark. In this instance, NVE made a product containing ephedrine alkaloids, a substance that was later deemed adulterated and unsafe by the FDA. A product that was legitimately made by the trademark owner, but which is later considered to have become deteriorated during distribution, can no longer be deemed "genuine" and its sale can be enjoined as trademark infringement or dilution. Distribution of a product that does not meet the

trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder and its distribution constitutes trademark infringement. *See Polaroid Corp. v. Blue Dot Corp.*, 214 U.S.P.Q. 192 (D.N.J. 1981) (alteration of expiration date on POLAROID film creates false impression that the film is new); *Eastman Kodak Co. v. Photaz Imports Ltd.*, 853 F. Supp. 667 (W.D.N.Y. 1993) (during the repackaging of KODAK film, some original film expiration dates were removed and new, extended dates were substituted, in violation of Section § 43(a) of the Lanham Act); *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 39 U.S.P.Q.2d 1136 (2d Cir. 1996) (preliminary injunction granted against the continued sale of HALLS cough drops older than their stated freshness date). The "first sale" or "exhaustion" doctrine is no defense where the goods have deteriorated in the distribution chain. *See Denbicare U.S.A. v. Toys "R" Us*, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996)

16. DEFENANT'S LEGAL ISSUES

<u>Defendant DeMelo:</u>

    a) Whether the sale of authentic NVE's "Stacker 2" and "Stacker 3" ephedrine products, produced by NVE and sold to DeMelo by legitimate NVE distributors, during a time when the FDA ephedrine ban was overturned constituted a use or offer for sale of a reproduction, counterfeit, copy, or colorable imitation of NVE's "Stacker 2" and / "Stacker 3" marks, or a confusingly similar mark, that caused likelihood-of-confusion about the origin of the goods. Wherein, all goods sold by the DeMelos were actual authentic and genuine NVE "Stacker 2" and "Stacker 3" products and were not repackaged or otherwise manipulated in any way, and were not expired product.

b) Whether Defendant DeMelo's activities are protected by the "first sale" or "exhaustion" doctrine premised on grounds that the trademark protections of the Lanham Act were exhausted after the trademark owner's, NVE's, first authorized sale of that product to the Distributors.  Wherein regardless whether the defendant was authorized by the producer to sell the product, a first or subsequent purchaser's resale of genuine goods under the producer's trademark is neither infringement nor unfair competition. The "first sale" or "exhaustion" doctrine holds that "the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 301 (3d Cir. 1998). Regardless whether the defendant was authorized by the producer to sell the product, a first or subsequent purchaser's resale of genuine goods under the producer's trademark is neither infringement nor unfair competition. Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083, 1084 (9th Cir. Cal. 1998). The theory behind the resale rule is this: "when a purchaser does no more than stock, display, and resell a producer's product," "consumers are not confused as to the origin of the goods" because "the origin has not changed . . ." *Taylor Made Golf Co. v. MJT Consulting Group,* 265 F. Supp. 2d 732, 739 (N.D. Tex. 2003). Conduct must go beyond "merely stocking and reselling . . . to support a cause of action for infringement." *Id.*

c) Whether the FDA ban was in effect during the time the Defendant DeMelo sold the authentic NVE "Stacker 2" and "Stacker 3" ephedrine products. Wherein, the DeMelo purchase from the distributors and sale of products took place *after* the Dist. Court invalidated the FDA ban but *before* the FDA ban was reinstated by the 10th Circ.

d) Whether NVE failed to dispose of its Stacker 2" and "Stacker 3" ephedrine supplement products in 2004 and instead permitted these products to enter the market place.

e) Whether NVE knew or should have known that Defendant DeMelo (and /or other third parties) were buying "Original NVE Products" from authorized distributors, and NVE allowed the Defendant DeMelo (and / or other third parties) to sell such products allegedly causing "damage" to NVE which NVE could have mitigated by preventing said goods from entering the stream of commerce.

f) Whether NVE acted with culpable conduct including bad faith, fraud, and / or malice because NVE knew or should have known that Defendant DeMelo (and /or other third parties) were buying "Original NVE Products" from authorized distributors, and NVE allowed the Defendant DeMelo (and / or other third parties) to sell such products allegedly causing "damage" to NVE which NVE could have mitigated by preventing said goods from entering the stream of commerce.  Such conduct justifies NVE liability for payment of reasonable attorney's fees and costs to Defendant DeMelos under 15 U.S.C. § 1117(a) which provides in relevant part that "the court in exceptional cases may award reasonable attorney fees to the prevailing party."

Defendant Datwani: N/A

## 17. MISCELLANEOUS

Set forth any other matter which require action by, or should be brought to the attention of the Court.

## 18. JURY TRIALS – the following should be submitted to the Court no later than ~~TO BE~~ July 27, 2009 ~~SET~~:

A.    Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of its position on all disputed issues of law.  In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B.    Counsel shall submit jointly to the Court a single set of: proposed preliminary and final jury instructions as to which the parties are in agreement.  Counsel for each party shall also submit to the Judge, with a copy of opposing counsel, written requests for additional instructions to the jury only as to which the parties certify that they have not been able to agree.  Supplemental requests for instructions as to facts or legal issues that could not reasonably have been anticipated before trial may be submitted at any time prior to argument to the jury.  All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same.  In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C.  If any hypothetical questions are to be put to an expert witness on direct examination, these shall be submitted to the Judge and to opposing counsel.

D.  Counsel shall jointly submit to the Court a single set of proposed voir dire questions as to which the parties are in agreement.  Counsel shall submit to the Judge, which a copy to opposing counsel, any additional proposed voir dire as to which the parties certify that they have not been able to reach agreement.

E.  Counsel shall jointly submit to the Court a single proposed special verdict sheet.

F.  Three copies of a joint exhibit list and two joint bench books of trial exhibits shall be submitted to the Court.

G.  Counsel shall provide the Court with a copy of the jury instructions and proposed verdict sheet on a computer disk in a WordPerfect readable format.

19. NON-JURY TRIALS – The following shall be submitted to the Court no later than

N/A      .

[Jury trial as to all issues has been demanded by each of the parties]

20. TRIAL COUNSEL (List the names of trial counsel for all parties)

Charles P. Guarino for Plaintiff NVE, Inc.

Ernest D. Buff for Defendants Joseph R. DeMelo, Norma DeMelo and Rezultz Marketing

Monica Y. Cho for Defendant Arun Datwani

21. BIFURCATION (Where appropriate, the issues relating to liability shall be severed and tried to verdict.  Thereafter, all issues relating to damages shall be tried.  The issues of liability and damages SHALL (SHALL NOT) be tried separately.)

22. ESTIMATED LENGTH OF TRIAL

2 days for liability and 1 day for damages.

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

Charles P. Guarino
*Counsel for Plaintiff NVE, Inc.*

Ernest D. Buff
*Counsel for Defendants Joseph DeMelo, Norma DeMelo and Rezultz Marketing*

Monica Y. Cho
*Counsel for Defendant Arun Datwani*

Consent order resolving case will be submitted

Dated: July 6, 2009

PATTY SHWARTZ
United States Magistrate Judge

(EXHIBIT LIST FOLLOWS)

## Plaintiff NVE's Exhibit List

| Trial Exhibit # | Deposition Exhibit # | Offered By | Description of Document | Plaintiff's Objections | Defendant's Objections | Prior Rulings Re: Exhibit | Date Offered into Evidence | Date Admitted into Evidence |
|---|---|---|---|---|---|---|---|---|
| 1 | | NVE | Trademark Registration Certificates | | | | | |
| 2 | | NVE | Photographs of product packaging | | | | | |
| 3 | | NVE | Correspondence from Defendant Demelo to NVE | | | | | |
| 4 | | NVE | Invoices | | | | | |
| 5 | | NVE | Purchase Orders | | | | | |

All other documents listed on Plaintiff's and Defendants' Initial Disclosures pursuant to Fed. Civ. P. Rule 26(a)(1), and all documents intended to be relied upon by Defendants.

## Defendant DeMelo's Exhibit List

| Trial Exhibit # | Deposition Exhibit # | Offered By | Bates Ranges | Description of Document | Plaintiff's Objections | Defendant's Objections | Prior Rulings Re: Exhibit | Date Offered into Evidence | Date Admitted into Evidence |
|---|---|---|---|---|---|---|---|---|---|
| 001-002 | | DeMelo | 000001-000002 | Payment on Account | | | | 10/6/2008 | |
| 003-004 | | DeMelo | 000003-000004 | Purchase Order | | | | 10/6/2008 | |
| 005 | | DeMelo | 000005 | Payment on Account | | | | 10/6/2008 | |
| 006-028 | | DeMelo | 000006-000028 | Purchase Order | | | | 10/6/2008 | |
| 029 | | DeMelo | 000029 | NVE product purchase chart | | | | 10/6/2008 | |
| 030-050 | | DeMelo | 000030-000050 | Invoices | | | | 10/6/2008 | |
| 051-063 | | DeMelo | 000051-000063 | Police Reports and correspondence concerning character of witness Eli Kliger | | | | 7/1/2009 | |

All other documents listed on Plaintiff's and Defendants' Initial Disclosures pursuant to Fed. Civ. P. Rule 26(a)(1), and all documents intended to be relied upon by Plaintiff and Defendant Datwani.